UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Criminal No. 19-10081-IT |
| | ) |
| STEVEN MASERA, | )  **FILED UNDER SEAL** |
| | )  **(Leave to File Granted May 4, 2022)** |
| Defendant | ) |
| | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM** ████

The government respectfully submits this sentencing memorandum ████████ ████████████████████████████████████████████████████████████ in connection with the sentencing of defendant Steven Masera.

In his role as William "Rick" Singer's accountant, Masera was involved in payments to and from Singer's for-profit college counseling business, The Key, and sham charitable foundation, The Key Worldwide Foundation ("KWF"), including payments made in connection with both the athletic recruitment and test-cheating aspects of Singer's scheme. Masera invoiced parents for Singer's illegitimate services, made payments to university coaches and athletic department administrators (and university athletic funds under their control) and to SAT/ACT administrators and proctors, and created fraudulent donation receipt letters and fake invoices to allow parents to write their payments off as purported donations or business expenses. While Masera's role was an important one, in that he facilitated nearly all of the financial transactions involved in the scheme, it was also a minor one, in that everything he did was at Singer's direction, his involvement was limited to facilitating the financial aspects of the scheme, and he received no

"extra" personal benefit, beyond his ordinary compensation, for his participation in the illegitimate aspects of Singer's business.

Further, Masera accepted responsibility for his actions promptly upon being charged ███ ████████████████████████████████████████████████████████████████████ ████████████████ Taking these factors into account, along with the sentences imposed on related defendants, and in light of the defendant's personal characteristics – in particular, his age and multiple medical conditions – the government recommends that Masera be sentenced to time served (one day) followed by one year of supervised release.

## I.      Overview of the Offense Conduct

Masera began working for The Key in or about 2008. From that time until his resignation in or about December 2017, he was responsible for invoicing parents, both for The Key's legitimate college counseling services and for Singer's side-door and test cheating "services," and for making the associated back-end payments to university insiders and other facilitators. While he did not know all the details of the scheme, Masera understood from an early point that the payments parents were making to Singer's organization, and those Singer was making to coaches and university athletic funds, were in exchange for admission.[1] Masera further understood that, once established, KWF served as a façade through which parents' large, round figure payments could be funneled, disguised as charitable contributions, and deducted from their taxes. Indeed, Masera not only provided information that was used to prepare the necessary paperwork for

---

[1] Masera had limited insight into the test-cheating aspect of the scheme. He was, however, fully aware that Singer's associates, including co-defendant Mikaela Sanford, were completing classes for the children of Singer's clients. Masera billed the families for the class-taking, and paid Sanford and others for those services.

KWF's recognition as a 501(c)(3) nonprofit entity, but also prepared and sent out the phony charitable deduction letters falsely stating that "no goods or services" had been exchanged.

For example, after defendant John Wilson's son was admitted to USC as a purported water polo recruit in 2014, Wilson emailed Singer, "Thanks again for making this happen! Pls give me the invoice. What are the options for payment? Can we make it for consulting or whatever from the key so that I can pay it from the corporate account?" Singer responded, "Yes we can send you an invoice for business consulting fees and you may write off as an expense." Singer later forwarded the email chain – with subject line "USC fees" – to Masera, who then coordinated directly with Wilson's assistant to structure Wilson's total payment of $220,000 as a $100,000 "donation" to KWF, supported by a phony donation receipt letter, and payments of $100,000 and $20,000 to The Key and Singer, respectively, supported by fake consulting invoices. When Wilson's assistant informed Masera that the single line-item of "consulting services" would not cut it in the event of an audit, Masera sent her a revised invoice with a more detailed description, which he fabricated, knowing that no such services had been or would be provided. A few days after receiving Wilson's payments, Masera emailed Singer, "When do you want to pay USC water polo for John Wilson?" Singer responded that he wanted to deliver a cashier's check that week, and the next day, a $100,000 cashier's check was issued from The Key to USC men's water polo.

Masera also took steps to help conceal the nature and purpose of the payments. For example, in or about November 2014, Masera informed Singer that the organization's outside accountants were okay with "the reasons for paying [co-defendant] Gordie Ernst," but wanted an explanation for a $100,000 payment to co-defendants Ali Khosroshahin and Laura Janke's private soccer club. Masera told Singer that they needed documentation to show that the payment was a donation. Singer then asked Khosroshahin to write a statement about the $100,000 "donation"

3

KWF made "to coach and mentor underserved Latino kids in [Orange County]." In reality, the payment was in exchange for the admission of defendant Doug Hodge's daughter to USC as a phony soccer recruit. Throughout, Masera was aware that the reality was that KWF was not engaged in any meaningful charitable activity.

## II.    The Applicable Sentencing Guidelines

Probation has determined that Masera's total offense level under the Sentencing Guidelines is 23. That calculation reflects a base offense level of 28 under Sections 2E1.1 and 2S1.1 (which includes a 20-level increase corresponding to the value of the funds laundered during the period of Masera's employment with Singer, which totals approximately $21 million); a two-level decrease under Section 3B1.2(b) based on the defendant's role as a minor participant in the criminal activity; and a three-level decrease pursuant to Section 3E1.1 for acceptance of responsibility. Neither party has objected to this calculation. The resulting Guidelines sentencing range is 46 to 57 months.

## III.    Sentencing Recommendation ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ The government further submits that a downward variance is appropriate to avoid unwarranted sentencing disparities and to account for the defendant's age and multiple medical conditions.

Upon being charged in March 2019, Masera promptly accepted responsibility ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

4

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

Separately, the government is mindful of the sentences imposed on related defendants. Only three Singer associates (or "facilitators") have been sentenced to date: Mark Riddell (19-cr-10074-NMG), Niki Williams, and Martin Fox. Riddell played a critical role in the test-cheating aspect of the scheme, posing as a proctor and correcting students' answers after they finished the exam or working with the students to cheat during the exam. Over eight years, Riddell secured inflated scores for 24 students on 27 exams, receiving $5,000 to $10,000 per exam, for a total of just under $240,000 over the course of the scheme. Judge Gorton sentenced Riddell to four months in custody, ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ Williams was a public-school employee who was a low-level player in the scheme and received only $20,000 for her role in allowing Riddell to purport to proctor exams at Singer's Houston test center while helping students cheat. This Court

sentenced Williams to one year of probation. Martin Fox facilitated both the test-cheating and side-door aspects of the scheme by serving as a middleman between Singer and Williams and between Singer and college coaches. Fox earned approximately $245,000 from the scheme, but was also facilitating bribe payments totaling thousands of dollars more. This Court sentenced Fox to three months incarceration plus three months of home confinement, accounting for Fox's ███████ ███████████████████ significant health issues.

In the government's view, Masera is more culpable than Williams, but less culpable than Riddell and Fox, particularly given the degree to which they benefitted financially from the scheme. ████████████████████████████████████████████████████████ ████████████████████████████████ While Masera is not facing the life-threatening health complications that Fox was at the time of his sentencing, his age is an issue that was not present with respect to Williams, Fox, or Riddell, and he does suffer from several serious medical conditions, which are detailed in the PSR and in his own sentencing submission. The government's recommendation of time served balances these competing factors by taking into account the nature and seriousness of Masera's offense while also ███████████████████████, and considering both his age and health and the sentences imposed on similarly situated defendants in the college admissions cases.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the

defendant to time served followed by one year of supervised release.


Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney


By:      /s/ Leslie A. Wright
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
IAN J. STEARNS
STEPHEN E. FRANK
Assistant United States Attorneys


## Certificate of Service

I hereby certify that this document was filed under seal with the Clerk of Courts on May 6, 2022, and will be sent via email to counsel of record for the defendant and to Senior Probation Officer Martha Victoria.

By:      /s/ Leslie A. Wright
LESLIE A. WRIGHT
Assistant United States Attorney